UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-679-MOC-DCK

| | |
|---|---|
| DAN BISHOP, | ) |
| Plaintiff, | ) |
| vs. | ) |
| AMY L. FUNDERBURK, et al., | ) **ORDER** |
| Defendants. | ) |

In this action, Plaintiff Dan Bishop, the incumbent member of the U.S. House of Representatives for the Ninth District of North Carolina, has sued justices, judges, and clerks of the North Carolina Court of Appeals and the North Carolina Supreme Court. Plaintiff alleges that Defendants have violated Plaintiff's First Amendment right under the U.S. Constitution by refusing to disclose how the judges voted on three emergency orders that have temporarily suspended the candidate-filing period for the 2022 elections for all offices in North Carolina. Plaintiff seeks an order from this Court requiring, among other things, the judges to disclose how they voted on their orders.

Pending before the Court are two separate motions to dismiss: a Motion to Dismiss, filed by Defendants Tamara Barringer, Philip Berger, Jr, Anita Earls, Samuel L. Ervin, IV, Amy L. Funderburk, Robin Hudson, Michael Morgan, and Paul Newby, (Doc. No. 14), and a Motion to Dismiss, filed by Defendants John Arrowood, Jeffery Carpenter, Allegra Collins, Richard Dietz, Chris Dillon, Fred Gore, Jefferson Griffin, Toby Hampson, Lucy Inman, Darren Jackson, Hunter Murphy, Eugene H. Soar, Donna Stroud, John Tyson, April Wood, and Valerie Zachary, (Doc.

1

No. 17).

Both motions seek dismissal based on lack of subject matter jurisdiction, and on other theories, including sovereign immunity, qualified immunity, and abstention principles. Moreover, the Court of Appeals Defendants contend that dismissal is proper as to Plaintiff's claim against them in their individual capacities because they have not been properly served.[1] The Court held a hearing on the motions on April 18, 2022.

Finally, also pending before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. No. 2). For the following reasons, the Court grants Defendants' motions, denies Plaintiff's motion, and dismisses this action with prejudice.

I. BACKGROUND

A. **The Redistricting Litigation in North Carolina State Court, <u>N.C. League of Conservation Voters, Inc., et al., v. Representative Destin Hall, et. al.</u> and <u>Harper, et al., v. Representative Destin Hall</u> (Wake County Superior Court, Docket Nos. 21 CVS 015426 and 21 CVS 500085).**

North Carolina recently "gained a congressional seat due to population growth" based on the Census Bureau data. (Doc. No. 12-7 at 6). On November 4, 2021, the North Carolina General Assembly enacted a set of laws to establish new redistricting maps. (Id. at 7). Litigation ensued. In the ongoing two state court cases relevant to this lawsuit ("maps litigation"), voting rights groups and individual voters have alleged that the North Carolina General Assembly's "enacted redistricting maps for state legislative and congressional districts (hereinafter referred to as 'Enacted Plans') constitute extreme partisan gerrymanders," in violation of the North Carolina

---

[1] Because the Court is dismissing this action on other grounds, the Court does not address the Court of Appeals Defendants' argument as to improper service.

Constitution. (Id. at 4–6).

In the maps litigation in North Carolina state court, the plaintiffs have moved for a preliminary injunction prohibiting the State "from preparing for, administering, or conducting the March 8, 2022, primary elections and any subsequent elections for the United States House of Representatives using the Enacted Plans" and for "a remedial process to create a new plan that complies with the North Carolina Constitution," (Id. at 5–6). The state court three-judge panel heard these motions for preliminary injunction and denied the motions for the plaintiffs' failure to show a likelihood of success on December 3, 2021. (Id. at 7–13). The maps litigation plaintiffs appealed from that order. The lawsuit before this Court stems from the three orders issued by the North Carolina appellate courts concerning this maps litigation.

B.   **North Carolina Appellate Courts' Emergency Orders and Plaintiff's Records Requests.**

Plaintiff Dan Bishop is the incumbent member of the U.S. House of Representatives representing the Ninth District of North Carolina. (Doc. No. 12 at 2 ¶ 11). He intends to run for reelection in 2022. (Doc. No. 12 at 3 ¶ 12). On December 6, 2021, Plaintiff mailed a notice of candidacy for the primary election for his office scheduled for March 8, 2022. (Doc. No. 12 at 3 ¶¶ 13–15). Subsequently, Plaintiff learned that an anonymous, three-judge petitions panel of the North Carolina Court of Appeals ("COA") enjoined the North Carolina State Board of Elections "from opening of the candidate-filing period for the 2022 primary elections for Congress, the North Carolina Senate, and the North Carolina House of Representatives." (Doc. No. 12 at 3 ¶¶ 15, 16, see Doc. No. 12-1). The order was issued on December 6, 2021, and was signed by COA's Clerk of Court Eugene H. Soar "By order of the Court." (Doc. No. 12-1 at 2). On December 6, 2021, the COA "upon a vote of the majority of judges of the Court," vacated a stay

of elections and granted an en banc review. (Doc. No. 12-2 at 2). The order was again signed by Defendant Soar "By order of the Court." (Id. at 2).

On December 8, 2021, the North Carolina Supreme Court issued an order which, in part, allowed the redistricting lawsuit plaintiffs' Petition for Discretionary Review Prior to Determination by the Court of Appeals, Motion to Suspend Appellate Rules to Expedite a Decision, and Motion to Suspend Appellate Rules and Expedite Schedule, ("order" or "December 8 order"). (Doc. No. 12-3). The effect of the order was a temporary stay of the candidate-filing period for the 2022 elections for all offices in North Carolina until a final judgment on the merits of the redistricting lawsuit. (Doc. No. 12 at 5; Doc. No. 12-3 at 4). The order was issued "[b]y order of the Court in Conference" and was signed by Associate Justice Tamara Barringer "For the Court." (Doc. No. 12-3 at 5; Doc. No. 12-5 at 1, 13, 14).

Plaintiff requested the Supreme Court records that disclose the "identity of the justice who signed the orders for the court[,]" and the "votes of the justices in conference[.]" (Doc. No. 12-4). Defendant Funderburk responded by disclosing the records in the Clerk's possession that included the December 8 order and documents showing that Justice Barringer signed that order "For the Court[.]" (Doc. No. 12-5 at 1). Defendant Funderburk further disclosed that the Clerk's office had no other responsive records. (Doc. No. 12-5 at 1; Doc. No. 12 at 6 ¶ 29). On December 22, 2021, Plaintiff issued another request for records, declaring that absent the receipt of responsive documents "by 2 p.m. today[,]" he intended to file a federal lawsuit "to enforce this constitutional entitlement." (Doc. No. 12-6).

C.  **Procedural Background of This Lawsuit**

On December 22, 2021, Plaintiff sued all Justices, Judges, and Clerks of the North Carolina Court of Appeals and the North Carolina Supreme Court, in their official capacities.

4

(Doc. No. 1). In the original Complaint, Plaintiff alleged that the named Justices, Judges, and Clerks violated his First Amendment right to "public disclosure of the votes of Justices and Judges of the North Carolina Supreme Court and North Carolina Court of Appeals to suspend the 2022 election." (Doc. No. 1 at 2 ¶ 1). Plaintiff requested "[m]andamus or preliminary and permanent injunctions against Defendants … prohibiting them permanently from continuing their policies and practices resulting in denial or delay of access to votes on any matter by a justice or judge of the Supreme Court or Court of Appeals[.]" (Doc. No. 1 at 16–17 ¶ 1). He also requested a declaratory judgment "declaring Defendants' policies and practices that knowingly deny or delay access to votes by a justice or judge of the Supreme Court or Court of Appeals as unconstitutional[.]" (Doc. No. 1 at 17 ¶ 2). In addition to filing his Complaint, Plaintiff filed a motion for mandamus or preliminary injunction. (Doc. No. 2). Defendants received extensions of time to respond to Plaintiff's Complaint and pending motion. (Doc. No. 11).

On January 10, 2022, Plaintiff filed his Verified First Amended Complaint, (Doc. No. 12, adding individual capacity claims against each Defendant. (Doc. No. 12 at 17–18 ¶¶ 70–73). Plaintiff alleged that "each of the Defendants has acted with malicious intention to deprive Bishop of his clearly established constitutional right of access[,]" and requested nominal, actual and punitive damages "against each of the Defendants in his or her individual capacity." (Doc. No. 12 at 18 ¶¶ 72–73).

Plaintiff also amended the scope of the requested declaratory and injunctive relief. The Complaint now asks for mandamus or injunctions against all Defendants "prohibiting them denying or delaying access by Bishop to the recorded votes on the Election Suspension Orders[,]" (Doc. No. 12 at 18 ¶ 2), and for declaratory judgment "declaring that Bishop is entitled to access to the recorded votes on the Election Suspension Orders[,]" (Doc. No. 12 at 19

5

¶ 3).

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction. <u>United States ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347 (4th Cir. 2009). "They possess only that power authorized by Constitution and statute." <u>Randall v. United States</u>, 95 F.3d 339, 344 (4th Cir. 1996). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." <u>Vuyyuru</u>, 555 F.3d at 347. The existence of federal subject matter jurisdiction is a threshold issue, <u>Jones v. Am. Postal Workers Union</u>, 192 F.3d 417, 422 (4th Cir. 1999), and a challenge to the court's subject matter jurisdiction is properly considered on a motion under Fed. R. Civ. P. 12(b)(1), <u>Clinton v. Brown</u>, No. 3:15cv48, 2015 WL 4941799, at *2 (W.D.N.C. Aug. 19, 2015).

The burden of establishing federal subject matter jurisdiction rests on the plaintiff. <u>Clinton</u>, 2015 WL 4941799, at *2. The moving party should prevail on a motion to dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Motion to Dismiss under Rule 12(b)(6) for Failure to State A Claim

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the

6

complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted). While the Court may construe Plaintiff's complaint liberally because he is a pro se plaintiff, the complaint must still allege "'facts sufficient to state all the elements of [his] claim'" to survive a motion to dismiss. Williams v. Wal-Mart Stores East, L.P., No. 5:18-CV-33-BO, 2018 WL 3341181, at *2 (E.D.N.C. July 6, 2018) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

### III.    DISCUSSION

**A. Eleventh Amendment and North Carolina Principles of Sovereign Immunity**

Defendants first contend that sovereign immunity bars Plaintiff's First Amendment claim to the extent Defendants have been sued in their official capacities. The Court agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms the Amendment applies only to suits brought against a state by "Citizens of another State," it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974). This immunity also extends to state

7

agencies and other government entities properly characterized as arms of the state. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). It follows that state officers acting in their official capacity are also entitled to Eleventh Amendment protection because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

The exceptions to sovereign immunity may allow a lawsuit against state officials (1) where Congress has properly abrogated a state's immunity, Fitzpatrick v. Bitzer, 428 U.S. 445, 452–56 (1976); (2) where a state has waived its immunity to suit in federal court, College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal law, Ex parte Young, 209 U.S. 123, 155–56 (1908).

None of these exceptions apply in this case. First, Congress has not abrogated the states' immunity with respect to Plaintiff's First Amendment claim. Will, 491 U.S. at 66. Second, the State of North Carolina has not consented to suit in federal court by any express waiver. See Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989). Finally, the Ex Parte Young exception to the Eleventh Amendment immunity also does not apply here. The Ex Parte Young doctrine established a narrow exception to sovereign immunity to seek prospective relief against state officers charged with enforcing an unconstitutional state law. Under this doctrine, a plaintiff must sue an official who is "directly involved" in enforcing state laws and policies that are contrary to federal law. Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001).

8

Here, Plaintiff has sued the Chief Justice, Associate Justices, and Clerk of the North Carolina Supreme Court, and the Judges and Clerk of the North Carolina Court of Appeals. Ex Parte Young exception, by its own express terms, does not apply to these judicial officials. As the Supreme Court in Ex Parte Young explained, "the right to enjoin an individual, even though a state official does not include the power to restrain a court from acting in any case brought before it," since "an injunction against a state court would be a violation of the whole scheme of our Government." 209 U.S. at 163. "The difference between the power to enjoin an individual from doing certain things, and the power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists …." Id. Thus, the Ex Parte Young exception to sovereign immunity "does not normally permit federal courts to issue injunctions against state-court judges or clerks. Usually, those individuals do not enforce state laws as executive officials might[.]" Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021) (unanimously rejecting the Ex Parte Young relief against state-court judges, and with majority reaching the same conclusion with respect to state-court clerks).

In addition to the fact that the Ex Parte Young exception does not apply to judicial officials, injunctive relief is generally not available against judicial officials. That is, 42 U.S.C. § 1983 was amended in 1996 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (amended by Pub. L. No. 104-317, tit. III, § 309(c), 110 Stat. 3847, 3853 (Oct. 19, 1996) (Federal Courts Improvement Act of 1996 ("FCIA")).

Additionally, "[i]f a declaratory judgment proceeding actually constitutes a suit against the sovereign, it is barred absent a waiver of sovereign immunity." Goldstein v. Moatz, 364 F.3d

9

205, 219 (4th Cir. 2004). "[I]n such a situation, 'the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer.'" Id. (quoting Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 688 (1949)). Here, any declaratory order declaring that Plaintiff "is entitled to access to the recorded votes" in respect to the state court's orders is directed to the North Carolina Supreme Court and the North Carolina Court of Appeals as a whole. Therefore, the declaratory judgment request fails for that reason alone.

As the final nail in the coffin as to the Ex Parte Young exception to Eleventh Amendment sovereign immunity, Plaintiff is not seeking prospective relief in a true legal sense; rather, he seeks only a declaration as to alleged past wrongdoings. Ex Parte Young declaratory relief applies only to prospective requests to define legal rights in connection with future conduct, not simply to proclaim liability for a past act. Johnson v. McCuskey, 72 Fed. Appx. 475, 477 (7th Cir. 2003). Here, Plaintiff asks this Court to overturn the North Carolina courts' determination that their orders were to be published "For the Court" instead of as authored opinions disclosing the individual votes of each involved judge or justice. Thus, Plaintiff's "request for declaratory relief merely seeks to strip Defendants of judicial immunity and thereby impose liability." Clay v. Osteen, No. 1:10cv399, 2010 WL 4116882, at *4 (M.D.N.C. Oct. 19, 2010); see also Justice Network Inc. v. Craighead Cnty., 931 F.3d 753, 764 (8th Cir. 2019) (stating that retrospective declaratory relief against judges is barred by the Eleventh Amendment).

In sum, for the reasons stated herein, the Court finds that Plaintiff's claims against Defendants in their official capacities are barred by Eleventh Amendment sovereign immunity.[2]

---

[2] To the extent Plaintiff brings individual capacity claims that are not barred by Eleventh Amendment immunity, the individual capacity claims asserted against Defendants for the alleged

**B. Abstention Principles**

Defendants also argue that various abstention principles dictate dismissal of this action. The Court agrees. While federal courts must exercise their proper jurisdiction, it is appropriate for courts to abstain from some cases to avoid "undue interference with state proceedings." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 359 (1989). To avoid friction between federal and state courts, abstention doctrines prohibit a federal court from deciding a case within its jurisdiction when a state proceeding is pending or state judicial processes are implicated. "The long-standing public policy against federal court interference with state court proceedings antedates the Constitution." Lynch v. Snepp, 472 F.2d 769, 772 (4th Cir. 1973). The Fourth Circuit has applied these abstention principles to withhold jurisdiction in cases invoking First Amendment rights. Id. at 775 ("Despite the 'firstness' of the first amendment, we do not believe that every case asserting a first amendment violation is a proper one for a federal court to interfere with a state proceeding."). There is also strong precedent for abstaining in cases, such as this one, involving litigation over the core state function of redistricting. See Growe v. Emison, 507 U.S. 25, 34 (1993) ("Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it.").

Here, Plaintiff seeks a federal decree that would have the effect of constitutionally mandating disclosure of judicial deliberations over orders issued by the state appellate courts.

---

violation of Plaintiff's First Amendment rights simply restate the factual allegations regarding judicial conduct and add the words "malicious intent," with no additional supporting facts. (Doc. No. 12 at 17–18 ¶¶ 70–73). In any event, as the Court discusses, infra, Plaintiff's claims against Defendants in their individual capacities are subject to dismissal based on judicial immunity and abstention principles.

11

Such a decree would immediately intrude on the internal workings of the North Carolina judiciary in the ongoing maps litigation by rejecting the choice of the state's appellate courts, including its highest, to issue these emergency orders in conference, bearing the inscription "For the Court," (Doc. No. 12-3 at 5), or by "By order of the Court[,]" (Doc. No. 12-2), instead by full-fledged, authored opinions. That request hinders the deliberative processes of North Carolina's appellate courts and intrudes on administration of state judicial business. This Court finds that abstention is appropriate under O'Shea v. Littleton, 414 U.S. 488 (1974), and Younger v. Harris, 401 U.S. 37 (1971).

First, as to O'Shea abstention, the O'Shea Court announced an abstention doctrine that aims to protect state judicial processes from intrusions by federal courts. The O'Shea plaintiffs sought injunctions in connection with the discriminatory administration of the criminal justice system in an Illinois county. 414 U.S. at 491–92. They challenged criminal prosecutions "brought under seemingly valid state laws" and essentially sought an order that would likely lead to future "interruption of state proceedings to adjudicate assertions of noncompliance" by the defendants. Id. at 500. The U.S. Supreme Court held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place" in future proceedings would lead to the federal interference in state judicial proceedings, which is prohibited under the abstention principles. Id. The Court held that federal courts may not exercise their jurisdiction over lawsuits that seek to impose "an ongoing federal audit of state . . . proceedings." Id.

Here, Plaintiff's request for equitable relief is just such a prohibited audit of North Carolina's state court proceedings. The original Complaint in this case directly asked this Court to intrude into all appellate state court proceedings, as it demanded a declaration of unconstitutionality and "injunctions against Defendants … prohibiting them from continuing

12

their policies and practices resulting in denial or delay of access to votes on any matter by a justice or judge of the Supreme Court or Court of Appeals." (Doc. No. 1 at 16–17 ¶ 1; Doc. No. 1 at 17 ¶ 2). Plaintiff narrowed the phrasing of the requested relief to ask for injunctions against state court officials "prohibiting them denying or delaying access by Bishop to the recorded votes on the Election Suspension Orders[,]" (Doc. No. 12 at 18 ¶ 2), and for a declaratory judgment "declaring that Bishop is entitled to access to the recorded votes on the Election Suspension Orders[,]" (Doc. No. 12 at 19 ¶ 3). Plaintiff requests the type of audit of the state judicial processes the O'Shea holding guarded against. See Kaufman v. Kaye, 466 F.3d 83, 87 (2d Cir. 2006) (stating that abstention is warranted where "any remedy fashioned by the state would then be subject to further challenges in the district court"). As Defendants note, it is difficult to imagine a more intrusive and unjustified intervention into internal judicial and deliberative processes and administration of state court business, than for a federal court to declare as unlawful what is an admittedly existing custom or practice in both federal and state courts. (Doc. No. 12 at 9–11 ¶¶ 45, 46, 52). Indeed, such declaration would fly in the face of the practice followed by the U.S. Supreme Court in issuing many of its non-merits and emergency rulings anonymously.[3]

As Defendants further note, Plaintiff has not yet even attempted to raise his voting records issue in the North Carolina state courts, which are well equipped to consider Plaintiff's First Amendment claim. See Virmani v. Presbyterian Health Servs. Corp., 350 N.C. 449, 472, 515 S.E.2d 675, 691 (1999); Doe v. Doe, 263 N.C. App. 68, 76, 823 S.E.2d 583, 588 (2018); see

---

[3] See "The 'Shadow Docket': The Supreme Court's Non-Merits Orders." (Aug. 27, 2021). Congressional Research Service, https://crsreports.congress.gov/product/pdf/LSB/LSB10637 (accessed Jan. 19, 2022). Despite that the Court's "shadow docket" has received recent criticism, it is no doubt constitutional.

13

also N.C. Gen. Stat. § 1-72.1. Abstention is appropriate where, as here, a plaintiff has an opportunity to raise the constitutional claims at issue in state courts. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982). Under these circumstances, the "relief now sought by [plaintiff] would be so intrusive in the administration of the [state] court system that [the court] must, based on applicable precedent, abstain." Kaufman v. Kaye, 466 F.3d 83, 86 (2d Cir. 2006) (relying on O'Shea principles); Parker v. Turner, 626 F.2d 1, 8 (6th Cir. 1980) (stating that because of extensive concerns about federal intrusion in and a resulting audit of the state judicial system, the need to abstain the federal court's jurisdiction over Plaintiff's Complaint is appropriate and "near absolute"). This Court, therefore, finds that dismissal of Plaintiff's challenges to the manner the state appellate system administers its non-merits and emergency orders' docket is appropriate under O'Shea and its progeny.

Likewise, abstention is appropriate under the abstention principles announced in Younger v. Harris. Younger exemplifies a class of cases in which federal court abstention is required when there is a parallel, pending state proceeding. The Supreme Court has extended Younger abstention to state civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987); Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). "If the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government," abstention is proper. Pennzoil, 481 U.S. at 11. Younger circumstances now encompass pending "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. at 367–68; see Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78 (2013). For example, the Supreme Court has held that federal courts

should abstain from Section 1983 constitutional challenges to state contempt procedures when a state judge has imposed civil contempt sanctions on a party to state litigation who has ignored state court orders. Juidice v. Vail, 430 U.S. 327, 329–30 (1977).

Courts generally examine three factors to determine whether federal jurisdiction should be withheld under Younger. Federal courts should refrain from exercising their jurisdiction if "(1) there is an ongoing state judicial proceeding that began prior to substantial progress in the federal proceeding, (2) that proceeding implicates important, substantial, or vital state interests, and (3) there is an adequate opportunity to raise constitutional challenges within the framework of the state judicial process." Robinson v. Thomas, 855 F.3d 278, 285 (4th Cir. 2017).

Here, all three criteria are present. First, there is an ongoing state proceeding that is set to determine the validity of North Carolina's new congressional district maps under the terms of the Constitution of North Carolina. See (Doc. No. 12-3 at 4–5). Second, that lawsuit undoubtedly implicates important state interests. (Doc. No. 12-3 at 3). Finally, on the last Younger factor, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." Moore v. Sims, 442 U.S. 415, 426 (1979); Gibson v. Berryhill, 411 U.S. 564 (1973); Juidice, 430 U.S. at 330. Here, Plaintiff has the opportunity to raise his constitutional issues in the North Carolina state courts, and Plaintiff fails to allege that such a bar exists under North Carolina law. Moreover, the parties to the underlying maps litigation have an opportunity to raise any constitutional concerns about state orders during that litigation. The third Younger requirement is deemed satisfied where a state-court non-party has a "substantial stake" in the state litigation. Hicks v. Miranda, 422 U.S. 332, 348–49 (1975) (Younger applies where interests of federal litigants "intertwined" with interests of state litigants in a pending state case). Finally, minimal respect for the state processes precludes a presumption that state courts will not

15

safeguard federal constitutional rights. Middlesex, 457 U.S. at 431–32. Here, in addition to O'Shea abstention, Younger abstention bars Plaintiff's request for relief.

In sum, guided by considerations of comity and respect for North Carolina's judicial processes and due deference to the ongoing state proceedings, this Court therefore will abstain from addressing Plaintiff's First Amendment claim under the principles of O'Shea and Younger.

### C. Judicial Immunity

Even if this Court were not dismissing Plaintiff's action based on abstention principles, the Court would dismiss it on another ground. That is, the Defendant judges and court clerks enjoy absolute immunity from suit. Judges are protected by absolute immunity for judicial acts except when they act in the clear absence of jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356 (1978) (jurisdiction in this context "must be construed broadly"). An act by a judge is "judicial" when it is "normally performed by a judge and ... the parties dealt with the judge in [the judge's] judicial capacity." King v. Myers, 973 F.2d 354, 357 (4th Cir. 1992).

These requirements are clearly satisfied here. Judicial deliberations with respect to an order and issuance of an order are squarely judicial acts. See, e.g., Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985) (act of assigning cases); Rosenthal v. Justices of the Supreme Court, 910 F.2d 561, 566 (9th Cir. 1990) (act of signing of an order on behalf of state supreme court). Here, the act of the appellate court judges in issuing orders designated as "By order of the Court" is a core judicial function. Furthermore, the courts' orders were clearly within the Court's jurisdiction.

Finally, Plaintiff alleges, without any supporting facts, that "each of the Defendants has acted with malicious intention" to deprive him of his constitutional right of access. (Doc. No. 12 at 18 ¶ 72). Courts have recognized similar claims against judges as frivolous attempts to pierce

16

immunity. See, e.g., Clay, 2010 WL 4116882, at *4. Moreover, judicial immunity "applies even when the judge is accused of acting maliciously and corruptly," since protecting a judge even under those circumstances is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554 (1967).

Additionally, the Defendant clerks have absolute quasi-judicial immunity for tasks they performed as an integral part of the judicial process. Court clerks are accorded derivative absolute immunity when they act in obedience to a judicial order or under the court's direction. See, e.g., Whole Woman's Health, 142 S. Ct. at 534 (stating that "nothing … supports the[] novel suggestion that we should allow … relief against state-court clerks, all while simultaneously holding the judges they serve immune"); McCray v. State of Md., 456 F.2d 1, 5 n.11 (4th Cir. 1972) ("Since judges are immune from suit for their decisions, it would be manifestly unfair to hold liable the ministerial officers who merely carry out that judicial will."); Dalenko v. Stephens, 917 F. Supp. 2d 535, 552 (E.D.N.C. 2013) (assistant clerk of court is immune for actions taken pursuant to court orders). Thus, Plaintiff's claims against the court clerks also enjoy immunity from suit.[4]

### IV. CONCLUSION

For the reasons stated herein, Defendants' motions to dismiss are granted, and this case is dismissed. Furthermore, Plaintiff's pending motion for preliminary injunction is denied.

---

[4] Because the Court finds that the clerks enjoy absolute judicial immunity, the Court does not need to address Defendants' alternative argument that the judicial Defendants also enjoy qualified immunity. In any event, qualified immunity certainly applies here, as there is no clearly established federal law requiring disclosure of judicial votes on non-merits orders.

**IT IS, THEREFORE, ORDERED** that:

1. The two Motions to Dismiss, (Doc. Nos. 14, 17), are **GRANTED**, and this action is **DISMISSED** with prejudice.

2. Plaintiff's pending Motion for Preliminary Injunction, (Doc. No. 2), is **DENIED**.

Signed: May 6, 2022

Max O. Cogburn Jr
United States District Judge